UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

OCHSNER CLINIC FOUNDATION, ET AL.              CIVIL ACTION

VERSUS                                         NUMBER 06-10542

SUSAN M. NICHOLAS, ET AL.                      SECTION "L" (5)


ORDER & REASONS

Before the Court is the Defendant Susan M. Nicholas's Motion to Dismiss (Rec. Doc. 4) and the Defendant Regence BlueShield's Motion to Dismiss or, in the Alternative, to Transfer Venue (Rec. Doc. 12).  For the following reasons, the Defendants' motions are now DENIED.

I.      BACKGROUND

Between January and July 2001, Mr. Roland A. Nicholas was provided medical services and treatment by Ochsner Clinic Foundation and/or its predecessor entities in Louisiana (collectively, "Plaintiffs").  On July 31, 2001, Mr. Nicholas died from complications arising from a liver transplant performed by the Plaintiffs.  Prior to that time, the Plaintiffs allegedly received assurance from Mr. Nicholas and his family that his bills would be paid.  Specifically, the Plaintiffs allege that Mr. Nicholas's wife, Susan M. Nicholas, now a resident of Washington state, executed a personal guaranty on July 17, 2001, in which she stated that "I hereby guarantee payment of all charges for the above patient."  (Ex. A to Pls.' Opposition, Rec. Doc. 5-2.)

Prior to seeking treatment in Louisiana, Mr. Nicholas was employed in Washington by Rod Nicholas Finishing Touch, Inc., a participating employer in a group insurance plan issued by Regence BlueShield ("Regence") to the Master Builders Association of King and Snohomish Counties.  Among other benefits, the plan provided Mr. Nicholas with $200,000 in coverage for

transplant-related services and had a limit of $2,000,000 in total lifetime benefits.  Regence is a Washington insurance carrier with its principal place of business in Washington.  Regence is the claims administrator of the Plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Because Mr. Nicholas's treatment in Louisiana apparently exceeded the scope of his benefits under the plan, Regence paid only a portion of his medical expenses.  Since 2001, the Plaintiffs have attempted to recover the balance in several separate proceedings.

On August 17, 2001, Mrs. Nicholas, acting as personal representative of her late husband's estate, opened proceedings for Mr. Nicholas's estate in Florida probate court.  The Plaintiffs submitted a claim in the probate proceedings seeking to recover outstanding balances for medical services but the claim was denied as untimely on November 6, 2003.  The Plaintiffs appealed but were again denied relief on November 30, 2004.  In addition, the Plaintiffs filed a separate lawsuit against Mrs. Nicholas in Florida state court in June 2002.  Four years later, on June 16, 2006, the Plaintiffs amended their complaint to add Regence as a defendant in that action.  However, after Regence removed the case to federal court, the Plaintiffs voluntarily dismissed the action in its entirety.  The instant lawsuit followed in this Court on November 22, 2006 against Mrs. Nicholas and Regence.  The Plaintiffs again seek recovery of the outstanding invoice balances for medical services and treatment rendered to Mr. Nicholas in 2001.

## II.    PRESENT MOTIONS

There are presently two motions before the Court.  First, Mrs. Nicholas has filed a motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(6) of the *Federal Rules of Civil Procedure*, contending that (1) this Court lacks personal jurisdiction over her, and (2) the Plaintiffs have failed to state a claim upon which relief can be granted.  Second, Regence has filed a motion to

dismiss, or alternatively, to transfer venue to the United States District Court for the Western
District of Washington pursuant to 28 U.S.C. § 1404(a).

## III.    LAW & ANALYSIS

### A.    Mrs. Nicholas's Motion to Dismiss

Mrs. Nicholas makes two broad contentions in support of her motion to dismiss.  First,
she argues that this Court may not exercise personal jurisdiction over her.  Second, she argues
that the Plaintiffs have failed to state a claim upon which relief can be granted because (1) the
Plaintiffs' claims are prescribed, (2) the Plaintiffs' claims are precluded under the doctrine of res
judicata in light of the Florida probate proceedings, and (3) the Plaintiffs cannot state a claim for
breach of fiduciary duty because she properly fulfilled her duties as personal representative of
her late husband's estate.  The Court will address each of these arguments in turn.

#### 1.    *Personal Jurisdiction*

Because the Plaintiffs "seek[] to invoke the power of the court," they "bear[] the burden
of proving that [personal] jurisdiction exists."  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d
465, 469 (5th Cir. 2006).  But the Plaintiffs need only make a *prima facie* showing, and the
Court will resolve all disputed facts in favor of jurisdiction.  *See id.*; *see also Cent. Freight Lines
Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In this case, the Court may exercise personal jurisdiction over Mrs. Nicholas only in
accordance with Louisiana's long-arm statute.  *See Icee Distribs., Inc. v. J & J Snack Foods
Corp.*, 325 F.3d 586, 591 (5th Cir. 2003); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331,
336 (5th Cir. 1999).  Louisiana's long-arm statute grants jurisdiction over non-residents to the
extent allowed by the due process clause of the United States Constitution.  *See* La. Rev. Stat.
Ann. § 13:3201(B).  An exercise of jurisdiction satisfies due process if the non-resident

purposely established minimum contacts with the forum and if exercising jurisdiction is fundamentally fair. *See Asahi Metal Indus., Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987); *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Icee Distribs.*, 325 F.3d at 591.

To determine whether or not a non-resident has purposely established minimum contacts in a contract case, courts consider the parties' prior negotiations, the parties' course of dealings, the terms of the contract, and the future consequences contemplated by the parties. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985); *Icee Distribs.*, 325 F.3d at 591-92. An alleged contractual relationship between a plaintiff and a non-resident defendant confers specific jurisdiction when the plaintiff's cause of action "arises out of or is related to" the contract at issue. *Aetna Cas. & Sur. Co. v. Cont'l W. Ins. Co.*, 97-206 (La. App. 3 Cir. 12/10/97), 704 So. 2d 900, 904.[1] Indeed, Louisiana jurisprudence recognizes that courts may exercise personal jurisdiction over a non-resident that creates obligations between herself and a Louisiana resident, conducts business in Louisiana, and enjoys the coverage of Louisiana law. *See de Reyes v. Marine Mgmt. & Consulting*, 586 So. 2d 103, 106 (La. 1991); *see also Am. Bank & Trust v. Sunbelt Envtl. Sys., Inc.*, 451 So. 2d 1111, 1117 (La. Ct. App. 1984) (finding that a non-resident's guaranty on a bank note in favor of a Louisiana bank established minimum contacts).

In the instant case, the Court finds that Mrs. Nicholas has purposely established minimum contacts with Louisiana. Mrs. Nicholas and her husband came to Louisiana to contract with the Plaintiffs for medical services. The terms of the alleged contract contemplated that

---

[1] Alternatively, a court may exercise general jurisdiction when a non-resident has regular and continuous contacts with the forum state, although the non-resident's actions in the forum do not give rise to the plaintiff's claim. *See Dickson Marine*, 179 F.3d at 336.

medical services would be rendered in Louisiana, and indeed they were for a period of approximately six months in 2001.  Viewed in a light favorable to the Plaintiffs, the allegations in this case demonstrate that Mrs. Nicholas deliberately entered into a continuing obligation with Louisiana businesses so that she could receive substantial medical treatment for her husband in Louisiana.[2]

The jurisdictional inquiry does not end here, however, as the Court must also consider whether its exercise of jurisdiction is fundamentally fair to Mrs. Nicholas.  *See Asahi*, 480 U.S. at 113.  To evaluate the issue of fairness, courts consider the burden on the non-resident defendant, the forum state's interest in the litigation, the plaintiff's wish to proceed in the forum state, and judicial economy and efficiency.  *See id.*; *Icee Distribs.*, 325 F.3d at 593-94.  It must be noted though that "where a defendant who purposefully has directed [her] activities at forum residents seeks to defeat jurisdiction, [she] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477; *see also Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384-85 (5th Cir. 2003).

Mrs. Nicholas concedes that both the Plaintiffs and the State of Louisiana have an interest in seeing this matter litigated in this forum.  Moreover, the Court finds that the slight burden on Mrs. Nicholas associated with litigating in Louisiana does not justify refraining from

---

[2]  Mrs. Nicholas's reliance on *NBD Bank v. Kersey*, No. 99-1851, 2000 WL 64307 (E.D. La. Jan. 25, 2000), *Pounds v. Florida Power & Light Co.*, 99-1091 (La. App. 1 Cir. 5/12/00), 762 So. 2d 161, and *ACG Mediaworks, L.L.C. v. Ford*, 03-978 (La. App. 5 Cir. 3/30/04), 870 So. 2d 1097, is misplaced.  *Kersey* involved a dispute between two non-residents and, importantly, the defendant guarantor in that case did not visit Louisiana to contract with the plaintiff.  The *Pounds* court holding that "a single act of shipping . . . units to Louisiana" does not confer specific jurisdiction is completely irrelevant to the instant case.  762 So. 2d at 164.  Lastly, the contract in *ACG Mediaworks* was performed outside of Louisiana, and thus that case is also inapposite.  *See* 870 So. 2d at 1104.

5

an exercise of jurisdiction in this case.  Although Mrs. Nicholas is a citizen of Washington, she previously served as personal representative for her husband's estate in Florida.  She also spent time in Louisiana with her husband in 2001.  While the Court recognizes that litigating this case in Louisiana may be inconvenient for Mrs. Nicholas, she clearly has an ability to travel and allowing this case to proceed in this forum is not fundamentally unfair.

### 2.      *Failure to State a Claim*

Mrs. Nicholas's second contention in support of her motion to dismiss is that the Plaintiffs have failed to state a claim upon which relief can be granted because (1) the Plaintiffs' claims are prescribed, (2) the Plaintiffs' claims are precluded under the doctrine of res judicata in light of the Florida probate proceeding, and (3) the Plaintiffs cannot state a claim for breach of fiduciary duty because she properly fulfilled her duties as personal representative of her late husband's estate.[3]

"The district court may not dismiss a complaint under rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The Court must construe the complaint liberally in favor of the plaintiff, "and all facts pleaded in the complaint must be taken as true." *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).  "In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory

---

[3]  Mrs. Nicholas's brief also focuses on the particularities of Louisiana suretyship law. However, whether or not the alleged obligation is classified as a surety does not impact her pleas of prescription or res judicata.  *See* La. Civ. Code Ann. art. 3046.  Moreover, Mrs. Nicholas offers no support for her claim that the Florida probate proceeding extinguished her husband's principal obligation and, thus, her obligation as surety.  In fact, one of the cases cited by Mrs. Nicholas suggests that the Plaintiffs may be required to proceed against her as both heir of the principal obligor and surety.  *See Succession of Moody*, 158 So. 2d 601, 603-04 (La. 1963).

allegations." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotations omitted).

### a.       Prescription

The Louisiana Civil Code provides that "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."  La. Civ. Code Ann. art. 3537.  In a contract case, a court shall consider the place of negotiation, performance, and the parties' domicile to determine the applicable law. *See id.*  In this case, it is clear that Louisiana substantive law applies to the Plaintiffs' contract claims against Mrs. Nicholas.

The Louisiana Civil Code provides that personal actions, such as contract claims, have a prescriptive period of ten years.  *See* La. Civ. Code Ann. art. 3499.  However, claims on an open account prescribe after three years.  *See* La. Civ. Code Ann. art. 3494.[4]  Even if the contract in this case is an open account, an issue the Court need not decide at this time, the Plaintiffs' claims would not be prescribed.  Here, the relevant prescriptive period began to run when the Plaintiffs made a demand for payment.  *See* La. Civ. Code Ann. art. 3495.  But under Louisiana law, prescription is interrupted when the obligee commences an action in a competent court against the obligor.  *See* La. Civ. Code Ann. art. 3462.  And the interruption continues as long as the suit is pending.  *See* La. Civ. Code Ann. art. 3463.  At the earliest, therefore, prescription began to run in 2001, but was interrupted from 2002 until 2006 while the Plaintiffs' previous suit was pending in Florida.  Shortly after that suit was voluntarily dismissed, the instant case was filed.

----

[4]  The Louisiana revised statutes define an open account as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions."  La. Rev. Stat. Ann. § 9:2781(D).

Accordingly, the Plaintiffs' claims are not prescribed, regardless of how the parties' relationship is characterized.

b.      **Res Judicata**

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A federal court's recognition of the preclusive effect of a prior state court judgment promotes comity between state and federal courts. Generally, under the Full Faith and Credit Clause, 28 U.S.C. § 1738, a federal court will look to whether a state court would recognize a judgment to determine the preclusive effect of such a judgment on a federal proceeding. *See Durfee v. Duke*, 375 U.S. 106, 109 (1963). Accordingly, to determine whether the Florida probate proceeding bars the Plaintiffs' instant claims, the Court will look to whether the Florida courts would recognize preclusion in such circumstances.

In Florida, causes of action must be closely related for res judicata to apply. *See Florida Bar v. St. Louis*, ___ So. 2d ___, 2007 WL 1285836, at *9 (Fla. May 3, 2007). Whether or not cases are closely related depends upon the presence of the following conditions: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in persons for or against whom claim is made." *Id.* (internal quotations omitted). Though there appears to be no Florida case directly on point, in *Prudential Insurance Co. of America v. Turkal*, the District Court of Appeal of Florida held that collateral estoppel was inapplicable where the plaintiff was neither a party to a prior probate action, nor in privity with any party, and could thus subsequently sue the estate's personal representative. 528 So. 2d 487, 487-88 (Fla. Dist. Ct. App. 1988); *see also Frazier v. Wasserman*, 69 Cal. Rptr. 510, 513-14 (Cal. Ct. App. 1968) (holding res judicata did not apply to a claim made against a

8

beneficiary following a final distribution by a probate court); *Shimshank v. Cox*, 116 So. 714, 717 (La. 1928) (same); *Baulch v. Holcom*, 174 P.2d 379, 381 (Okl. 1946) (same).[5]

In the instant case, it is not clear that the Plaintiffs were parties to the probate proceeding, given that their claim was denied as untimely.  But regardless, in that proceeding Mrs. Nicholas served as the personal representative of her husband's estate.  Here, the Plaintiffs have sued Mrs. Nicholas in her individual capacity.  Accordingly, the parties are not identical and Mrs. Nicholas's plea of res judicata fails.  *See Florida Bar v. St. Louis*, ___ So. 2d ___, 2007 WL 1285836, at *9 (Fla. May 3, 2007).

### c.   Breach of Fiduciary Duty

Florida law governs the Plaintiffs' claim that Mrs. Nicholas breached her fiduciary duty in her capacity as personal representative of her husband's estate.  Because a Florida court probated Mr. Nicholas's estate, Florida policy favors the application of its laws to determine if Mrs. Nicholas acted appropriately during the estate's administration.  *See* La. Civ. Code Ann. art. 3515; *see also Succession of Mary*, 2 Rob. (La.) 438, 441, 1842 WL 1733, at *2 (La. 1842) (suggesting that the law of the forum from which a personal representative's power derives ought to apply).

Under Florida law, an estate's personal representative has the same fiduciary duty as a trustee of an express trust.  *See* Fla. Stat. § 733.609(1).  That standard is one of reasonable care and caution.  *See* Fla. Stat. § 518.11(1)(a) (referenced by Fla. Stat. § 737.302); *see also State v. Lahurd*, 632 So. 2d 1101, 1104 (Fla. Dist. Ct. App. 1994); *Estate of Rosenthal*, 189 So. 2d 507,

---

[5]  These decisions are consistent in theory with the United States Supreme Court's recent holding in *Marshall v. Marshall*, 547 U.S. 293 (2006), that a federal court's *in personam* jurisdiction does not interfere with a state probate court's *in rem* jurisdiction so long as the federal court does not attempt to adjudicate the property that is in the custody of a probate court.

508 (Fla. Dist. Ct. App. 1966).  Of particular importance in this case, a personal representative must give any reasonably ascertainable creditor notice of the probate proceeding.  *See Landon v. Isler*, 681 So. 2d 755, 756 (Fla. Dist. Ct. App. 1996).  Moreover, such notice should be given in a diligent and prudent fashion.  *See State Bank of Orlando & Trust Co. v. Macy*, 133 So. 876, 879 (Fla. 1931).

In this case, the Plaintiffs allege that Mrs. Nicholas breached her fiduciary duty by not providing adequate notice of the probate proceeding and by failing to explain how the Plaintiffs could preserve their claim.  Mrs. Nicholas argues that since the Plaintiffs are sophisticated entities, she did not have a duty to provide the particular details and procedures for entering a Florida probate proceeding.  At this stage of the litigation, viewing this factual dispute in a light most favorable to the Plaintiffs, the Court cannot summarily conclude that the Plaintiffs have failed to state a claim for breach of fiduciary duty.

### 3.   *Summary*

For the foregoing reasons, the Court will deny Mrs. Nicholas's motion to dismiss.  The Court finds that it may exercise personal jurisdiction over Mrs. Nicholas, and that the Plaintiffs' claims are neither prescribed nor precluded.  Moreover, the Court will not dismiss the Plaintiffs' breach of fiduciary duty claim at this stage of the litigation.

### B.   **Regence's Motion to Dismiss or, in the Alternative, to Transfer Venue**

Regence first argues that it should be dismissed from this case because the Plaintiffs' complaint alleges that "Reliance has breached its contract with Ochsner by refusing to pay for services rendered to Roland."  (Complaint, ¶ 33.) (emphasis added).  However, this appears to be a clerical error, as the remainder of the complaint properly refers to Regence.  Accordingly, the Court will not dismiss Regence on this over-technical ground.  *See, e.g., Townsend v. Standard*

*Life Ins. Co. of Ind.*, No. 3:04-CV-0080B, 2004 WL 2583617, at *2 (N.D. Tex. Nov. 12, 2004).

      Second, Regence argues that venue should be transferred to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division in which it could have been brought.

28 U.S.C. § 1404(a).  In this case, it is undisputed that the Western District of Washington is a judicial district in which the Plaintiffs' claims could have been brought.  Therefore, the Court must determine whether transfer is appropriate for the convenience of the parties and in the interest of justice.

      This analysis is guided by the two traditional sets of factors widely known as "private interest" and "public interest" factors.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 505, 509 (1947); *In re Volkswagen, AG*, 371 F.3d 201, 203 (5th Cir. 2004).  The private interest factors include: (1) relative ease of access to proof; (2) availability of compulsory process for attendance of unwilling, and cost of obtaining attendance of unwilling, (3) possibility of view of premises, if view would be appropriate to the action, and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Gilbert*, 330 U.S. at 509.  The public interest factors include:  (1) the administrative difficulties created by congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with state law that must govern the case; (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and (5) the interest in avoiding unnecessary problems in conflict of laws, or in the application of foreign law.  *Id.*  Courts also traditionally give deference to the plaintiff's choice of forum, though that factor is not conclusive or

11

determinative.  *See Carpenter v. Parker Drilling Offshore USA, Inc.*, No. 05-265, 2005 WL 1432373, at *2 (E.D. La. June 16, 2005).

Upon consideration of these various factors, the Court finds that Regence has failed to demonstrate that a change in forum is appropriate in this case.  While the Court recognizes that Regence is a Washington corporation, and that certain witnesses, documents, and other sources of proof may be located in Washington, it is also true that significant sources of proof are located in Louisiana, the Plaintiffs' home state and chosen forum.  As the above discussion relating to Mrs. Nicholas's motion to dismiss demonstrates, not only did the parties contract in Louisiana, but Mr. Nicholas also received approximately six months worth of medical services in Louisiana.  Moreover, Louisiana law applies to several of the Plaintiffs' claims.  Accordingly, the Court concludes that the relevant private and public interest factors suggest that a transfer of venue is not appropriate in this case.

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that Mrs. Nicholas's Motion to Dismiss (Rec. Doc. 4) and Regence's Motion to Dismiss or, in the Alternative, to Transfer Venue (Rec. Doc. 12) are DENIED.

New Orleans, Louisiana, this __19th__ day of __July__, 2007.

_____
UNITED STATES DISTRICT JUDGE